## MORGAN WAREHOUSE & COMMERCIAL CO. v. GILBERT MFG. CO. et al.

### No. 11217.

Court of Civil Appeals of Texas. Dallas.
May 6, 1933.

Rehearing Denied June 3, 1933.

Leachman & Gardere, of Dallas, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, for appellees.

BOND, Justice.

This suit was filed by appellant, Morgan Warehouse & Commercial Company, against appellees Gilbert Manufacturing Company and Hughes-O'Rourke Construction Company for damages on account of payment of a judgment rendered against it in favor of Phillip Servello, for injuries resulting from the breach of a contract of guaranty or indemnity, and for actionable negligence of appellees by virtue of the breach. This appeal is the result of the trial court's action in sustaining appellees' special exceptions to appellant's first amended petition; appellant declining to amend, the suit was dismissed.

In its amended petition, appellant made substantially the following allegations, which are germane to its contention as to the action of the lower court, in sustaining the exceptions and in dismissing the suit: That it entered into a contract with appellee Hughes-O'Rourke Construction Company to repair, remodel, and erect a certain building on land belonging to it, providing for necessary materials and guaranteeing "all doors against defective material and workmanship, including installation, for a period of five years"; that, after said contract was executed, there was delivered to and installed in appellant's said building thirty Meeker type unlabeled elevator doors; that, when the aforesaid doors were purchased, appellant, by and through its president, S. P. Morgan, represented to appellees and their respective agents, Owen Hughes, president of Hughes-O'Rourke Construction Company, and Frank M. Jackson, president of the Gilbert Manufacturing Company, Inc., that it desired the elevators in said building equipped with doors which would automatically close when the elevator or cage was moved, and that appellees, through their respective agents, Hughes and Jackson, represented to appellant, shortly before said contract was entered into—June 15, 1925—that according to the written guaranty the Meeker type doors would automatically close upon the cage being moved either up or down from the floor on which the doors were installed; that the meaning of said guaranty was and is that the material used in said doors would not be defective, the workmanship used in making the doors and putting them together and in installing them would be first class, the doors would be installed in such a manner that they would operate as they were designed and intended to operate; and that the manufacturing company and the construction company guaranteed that said doors would be so installed and would work automatically for a period of five years.

Appellant further alleges that said doors were not as represented; that the material in said doors was defective, the doors were not properly balanced, and were too heavy for the purpose for which appellant desired to use them; that the workmanship in said doors was defective; that the doors were not properly installed, they would not operate automatically when the cage was moved, as contracted; that said doors were not properly fitted into the grooves, but were loose and wobbled from side to side; that "soon after the installation of said doors, in April of 1926, and prior and subsequent to said date, it informed appellee Manufacturing Company that said doors were not properly installed," and were not working properly, and requested it to remedy said defects; that from time to time, between April, 1926, and December, 1926, the manufacturing company attempted to remedy said defects, and to make the doors operate properly, and thereby induced appellant to keep said doors.

Appellant alleges further that, at and prior to the time of the installation of said doors, appellees, through their said presidents, knew the purpose for which said doors would be used and the character of business in which appellant was engaged, i. e., a general warehouse and cold storage business; that appellant would rent space in its building to other persons for the purpose of storing goods and merchandise; that such persons would use said elevators, and knew the danger to such persons if the elevator doors failed to operate properly, i. e., if they failed to close when the cage left the landing, and knew that such situation would constitute a hazard to persons in and about and using said elevators; that some time prior to July 24, 1926, it rented a portion of its space in its building to one Earl Marshall, who was engaged in the wholesale meat business; that on said date an employee of Earl Marshall, Phillip Servello, in the course of his employer's business, proceeded to the space leased by appellant to Earl Marshall and loaded some meat on a truck, which he intended to be carried down said elevator at the time the elevator took him down; that Servello and his employer knew that there was supposed to be a safety device on said elevator doors, which would cause the same to close automatically when the cage left the landing, and would hold the doors open while the cage remained at the landing; that on said occasion, after the elevator cage was removed from the landing, the doors did not automatically close, but, on account of the defective material, workmanship, and installation of said doors, the same remained open after the cage had left the landing, Servello fell through said opening to the pit at the bottom of the building, and received severe personal injuries; that, on account of the injuries so received, Servello instituted suit against appellant for damages in the sum of $42,500; that judgment was entered against appellant for the sum of $6,500 and costs, and, on February 4, 1928, it was compelled to pay Servello the sum of $6,577.40, in full satisfaction of said judgment; that the injuries sustained by Servello resulted directly from the breach of said contract by appellee manufacturing company, inasmuch as said appellee had guaranteed all of said doors against defective material and workmanship, including installation, for a period of five years, and from the negligence of the construction company, in improperly installing said defective doors; that, if the doors had been properly installed, the same would have closed automatically, when the cage was moved from the landing, on the occasion of said injury, and, because of such defective material, workmanship, and installation of said doors, and because of appellees' negligence in the particulars above set out, appellant has suffered damages in the sum of $6,577.40.

In this connection, appellant further alleged that the defendants knew that, if the doors did not operate automatically and close when the elevator cage left the landing, such an injury would likely occur; that, after the injury to Servello, and after claim was made upon it on account of the damages sustained by him, appellant notified appellees that such injuries had occurred; that claim for damages was being made against it; and that appellant would hold appellees liable for any sum that Servello might recover against it, thereby giving said appellees an opportunity to defend said cause, which they wholly failed and refused to do.

Appellees' special exceptions assail the above allegations, seeking recovery for the amount of the judgment alleged to have been paid by appellant for damages sustained by Servello, and recovered by him in suit brought against appellant, and all the allegations quoted incident to said judgment and payment, which, in effect, are tantamount to a general demurrer of appellant's petition. We agree to the conclusion reached by the trial court in sustaining the exceptions and in dismissing the case.

Appellant having pleaded that "soon after the installation of said doors—to wit, in April of 1926—and subsequent to said date, it informed appellee Manufacturing Company that said doors were not properly installed and were not working properly," and the further allegations touching its knowledge, prior to the alleged injuries to Servello, of the hazard incident to the defects in the construction and operation of the doors, it was put beyond the pale of being a mere passive wrongdoer. Appellant's allegations to the effect that it knew, prior to the injury, that the elevator doors would not work automatically, was dangerous to the occupants of the warehouse

and users of the elevators, and a constant menace to its tenants, and thus permitting the doors to remain and the elevators to be used, it thereby became the prime obligor for the damages sustained by the third party for its own alleged negligence. The exposure of such dangers, under such circumstances, to the users of the elevators, is the proximate cause of the alleged injuries to Servello.

 If appellant suffered for its own wrongdoing, the law will not relieve it, for it cannot recognize a right as springing from a wrong in favor of one concerned in its commission. Appellant was put to an election of either making repairs and recovering over against the guarantors, or indemnitors, for the necessary and reasonable expenses incident thereto, or using the doors, thereby exposing the dangers to innocent third parties, assuming the duties and responsibilities and suffer the consequences that naturally and proximately flow from the negligence of an active wrongdoer. The one creating the condition, in consequence of which injuries resulted to the third party, under circumstances that active negligence may be determined, and the other owing a duty to such third party, employ the dangerous instrumentalities thus created with actual knowledge of its imperfection; each become active tort-feasors, and, as between themselves, there can be no contribution or indemnity. "No one can make his own misconduct the ground for an action in his own favor." Thus the negligence of appellant, which was the foundation for the judgment, was active—in that, with full knowledge of the condition, appellant exposed the injured party to the created danger. As illustrating the text, and in consonance with our holding, we quote from 45 C. J. 884, as follows: "It is well established general rule that where the work of an independent contractor is completed, turned over to and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract. * * * There are also well recognized exceptions to the general rule, one of which is * * * that he is liable where the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons, provided * * * the owner or contractee does not know of the dangerous condition or defect."

 Appellant's petition contains other allegations of actionable damages for items of repair, and, notwithstanding that appellee's special exceptions and general demurrer thereto were overruled, the trial court dismissed the case. Such action of the trial court is fundamental error, and subject to be considered by appellate courts without assignments, and would ordinarily call for a reversal of this case; however, in view of appellant's admission in its brief, that "the other items of damage are not here the subject of appeal," we have not considered the fundamental character of the court's ruling on that issue; the point is in law deemed to be waived.

We conclude that the trial court correctly sustained the exceptions to appellant's petition, and dismissed the subject involved on this appeal. Accordingly, the case is affirmed.

Affirmed.