Kenneth Eugene DAVIS, as guardian of the Estate and Person of Cameron Eugenia Davis, an Incompetent, Appellant,

v.

David Curtis THOMPSON and Hoffman Brothers Packing Company, Appellees.

No. 8937.

Court of Civil Appeals of Texas, Amarillo.

April 30, 1979.

Rehearing Denied May 21, 1979.

Templeton & Garner, John Judge, Amarillo, for appellant.

Gibson, Ochsner & Adkins, S. Tom Morris, Amarillo, for appellees.

DODSON, Justice.

Plaintiff Kenneth E. Davis, individually and as guardian of his daughter Cameron E. Davis, instituted this suit to recover damages for personal injuries sustained by

Cameron when the automobile she was operating collided with a truck owned by Hoffman Brothers Packing Company and operated by David C. Thompson. The case was tried to a jury, which was instructed by the trial court on unavoidable accident. The trial court entered judgment that plaintiff take nothing against defendants Thompson and Hoffman Brothers Packing Company based upon the jury's verdict.

On appeal, plaintiff attacks the legal sufficiency of the evidence to raise the unavoidable accident instruction and challenges the instruction on several other grounds. We determine that the evidence raises unavoidable accident, that the trial court's instruction was erroneous, but that the erroneous instruction is harmless under the circumstances of this case. Affirmed.

The accident occurred at approximately 11:00 a. m. on July 13, 1973, on the Canyon Expressway near the northeast end of an elevated overpass crossing Western Street in Amarillo, Randall County, Texas. At the Western Street overpass, the Canyon Expressway is a six lane highway with three lanes for southbound traffic and three lanes for northbound traffic which are separated by a grassy median. The southbound and northbound lanes of the overpass are separated by an open area in the structure. Traffic is protected from the open area by a U-shaped steel guardrail.[1]

Prior to the accident, David Olivier, William Boyd VanDover, and Cameron Davis were each driving vehicles along the southbound lanes of the Expressway. Olivier was in the lead in a 1969 Ford van. Van-Dover followed in a 1967 Mack truck and trailer rig. Cameron Davis was driving a Volkswagon at some distance behind Van-Dover.

Rain fell on the highway for several minutes before, and continued during the course of events surrounding, the accident. The southbound lanes of the Expressway were unusually slick north of the Western Street overpass. Olivier, VanDover, and Miss Davis each lost control of their vehicles.

Olivier was driving in the center lane at a speed of approximately 50 miles per hour. He said his vehicle "just hit a slick spot and it just went crazy on me." He further testified "it just went sideways until it hit the median. . . . When my two wheels hit the median it [the vehicle] just swerved to the right, just almost straight across and down the embankment and across the service road and I ended up on this service station parking lot . . . ." His vehicle remained upright. Olivier checked his vehicle and then continued his journey to the city of Canyon.

VanDover was traveling in the center lane behind Olivier's vehicle at a distance of approximately 200 feet to one city block. He stated that his speed was approximately 50 to 55 miles per hour, that he saw the Olivier vehicle go out of control, that he let up on the accelerator, moved to the left, and then his vehicle jackknifed onto the grassy median. When his vehicle stopped it was facing to the north.

The evidence shows that the Davis vehicle went out of control, passed to the right of the VanDover vehicle, crossed the grassy median, and then hit the overpass protective guardrail. When the vehicle hit the guardrail it became airborne, traveled a distance, then landed on the Expressway in the center lane for northbound traffic.

David C. Thompson was driving on the Expressway in the center lane for northbound traffic. He testified as follows:

I saw the Volkswagon when it hit the guardrail. I would say it flipped end over end over that possibly spinning around or turning around like—you know, it might have turned around in the air like this. But I remember seeing this, seeing that Volkswagon, seeing that red vehicle do that, which it landed just over the white line in the middle lane about 20 foot in front of me. It was that—it happened fast. Boom, I hit it; boom, that was it.

1. A vehicle passing through or over the guardrail would likely descend onto Western Street.

He further stated that before the accident occurred his truck was in eighth gear, that his speed was approximately 50 miles per hour, that he was looking down the road, that he did not see the events which occurred in the southbound lanes, and that he first saw Miss Davis's Volkswagon when it hit the guardrail. When testifying in reference to a picture slide of the accident scene, Thompson further described the occurrence as follows:

I'd say I was about right here when I applied my brakes and started to swerve to the right when I saw that vehicle coming my way after it had hit that nose—that abutment. I swerved like that, but it just wasn't in time enough. It was just like that. That's how fast it was.

Miss Davis received severe personal injuries and was unable to testify at the trial. Kenneth E. Davis brought this action, individually and as Guardian of the Estate and Person of Cameron Davis, against David Curtis Thompson, Hoffman Brothers Packing Company, William Boyd VanDover, individually, C. L. VanDover and William Boyd VanDover, a partnership doing business as VanDover Livestock Haulers, Danny Olivier, W. D. Turner Construction Company (who constructed the Expressway), and the Texas State Department of Highways and Public Transportation.

Before the trial began, Davis took a nonsuit as to W. D. Turner Construction Company and the Texas State Department of Highways and Public Transportation. During the trial and before the case was submitted to the jury, Davis also took a nonsuit as to William Boyd VanDover, individually, C. L. VanDover and William Boyd VanDover, a partnership doing business as VanDover Livestock Haulers, and Danny Olivier. After the nonsuits were taken, only the defendants David Curtis Thompson and Hoffman Brothers Packing Company remain in the case.

The court submitted the case to the jury on twenty-two special issues. In summary, the jury found:

(1) That Thompson was not driving his vehicle at a greater rate of speed than a reasonable and prudent person would have driven under the existing circumstances; that he did not fail to keep a proper lookout; that he did negligently fail to apply the brakes to his vehicle and his trailer, but that such negligence, in either event, was not a proximate cause of the occurrence in question; and then answered the discovered peril issue in favor of Thompson.

(2) That Olivier and VanDover, respectively, kept a proper lookout, did not drive at an excessive rate of speed, did not negligently fail to apply their brakes, and did not negligently fail to steer their vehicles on the occasion in question.

(3) That Cameron Davis kept a proper lookout, did not negligently drive at an excessive rate of speed, maintained a clear distance between her vehicle and the VanDover truck, did not negligently fail to apply her brakes, did not negligently fail to steer her vehicle, and did not negligently fail to keep her vehicle on the right half of the divided highway.

(4) The jury refused to find any of the monetary damage issues in favor of Davis.

The parties do not challenge the jury's answers to the special issues.

■ Davis maintains that the evidence is legally insufficient to support an instruction on unavoidable accident. In determining this question, we must view the evidence in the light most favorable to the submission. *See Foremost Dairies, Inc. v. McClung*, 421 S.W.2d 178, 180 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). In essence, the evidence shows that the southbound lanes of the Canyon Expressway were unusually slick north of the Western Street overpass. Olivier, VanDover and Cameron Davis each lost control of his or her respective vehicle on the slick highway. Miss Davis crossed the median, hit the protective guardrail at the north end of the overpass, then immediately flipped into the path of the vehicle driven by Thompson.

Our Supreme Court determined in *Yarborough v. Berner*, 467 S.W.2d 188, 191

(Tex.1971), that unavoidable accident was raised by the evidence when a child too young to be negligent darted into the path of the defendant's vehicle. In the case before us, the fact that Olivier, VanDover, and Miss Davis lost control of their respective vehicles on the unusually slick highway raises non-negligence as to each of them. *See Blanton v. E. & L. Transport Co.*, 203 S.W.2d 312 (Tex.Civ.App.—Amarillo), *rev'd*, 146 Tex. 377, 207 S.W.2d 368 (1948) (but approved holding that unavoidable accident was raised).

■ Thompson contends that unavoidable accident is raised as to him because the evidence shows that there was no time for him to avoid the collision and therefore his conduct was not a cause. The evidence does show that Thompson did not see the Davis vehicle until it hit the guardrail. The distance from the guardrail to the point of impact was approximately 27 feet. The Davis vehicle hit the guardrail at an estimated speed of 38 to 42 miles per hour. The vehicle's estimated speed at the point of impact was from 0 to 15 miles per hour. The evidence further shows that Thompson's speed was approximately 50 miles per hour when he saw the Davis vehicle hit the guardrail. Thompson said the Davis vehicle landed 20 feet in front of him and that "it happened fast. Boom, I hit it . . . ." The fact that the Davis vehicle hit the guardrail and immediately flipped into the path of the vehicle driven by Thompson raised non-negligence on the part of Thompson. Under the circumstances, we hold that the evidence raised the submission of unavoidable accident.

Davis contends that the trial court committed reversible error by giving the instruction on unavoidable accident because the instruction is a comment on the weight of the evidence. We disagree. The challenged instruction is as follows:

(g) You are instructed that an occurrence may be an unavoidable accident, that is, an event not proximately caused by negligence of any party to the occurrence. If you believe from a preponderance of the evidence that the occurrence which is the subject of this suit was an unavoidable accident, then you may not find any party to the occurrence was guilty of negligence which was a proximate cause of the occurrence.

■ In *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 102 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.), the court said:

To constitute a comment on the weight of the evidence, the special issue must be worded so as to indicate an opinion by the trial court as to the verity of the fact inquired about. In our opinion the issue did not assume the nature of the answer.

This principle equally applies to an instruction in the charge. In *McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43, 45 (Tex.1978), our Supreme Court said:

Under Rule 277 it is mandatory that an instruction not be worded so as to indicate the opinion of the trial judge as to the verity or accuracy of the facts in inquiry.

In the case before us, the instruction does not indicate any opinion by the trial court that the occurrence was or was not an unavoidable accident. We conclude that the instruction is not a direct commitment on the weight of the evidence. *See* Tex.R. Civ.P. 277.

Davis further maintains that the trial court committed reversible error because the instruction placed undue emphasis on unavoidable accident which was reasonably calculated to cause and probably did cause an improper verdict. He specifically objects to the second sentence of the instruction which provides as follows:

If you believe from a preponderance of the evidence that the occurrence which is the subject of this suit was an unavoidable accident, then you may not find that any party to the occurrence was guilty of negligence which was a proximate cause of the occurrence.

In *Wheeler v. Glazer*, 137 Tex. 341, 153 S.W.2d 449, 452 (1941), our Supreme Court expressed the prevailing view that:

The *only* legitimate purpose to be served in submitting unavoidable accident is to call the matter to the attention of the jury, so that it will not be overlooked, and so that the jury will understand that they do not necessarily have to find that one or the other parties to the suit was to blame for the occurrence complained of. This purpose is fully accomplished when the jury is told that the occurrence in question was an unavoidable accident if it happened without the negligence of either of the parties to the suit (emphasis added).

The *Yarborough* Court quoted with approval the above language from *Wheeler.* The Court further noted a great departure from the *original function* of the unavoidable accident issue. The Supreme Court transformed the issue into an instruction by amending Rule 277 of the Texas Rules of Civil Procedure effective September 1, 1973. The amendment prohibits the submission of inferential rebuttal issues.

In *Scott v. Atchison, Topeka & Santa Fe Railway Co.*, 572 S.W.2d 273, 280 (Tex.1978), the Court pointed out that when "Act of God" is raised by the pleadings and the evidence, then the defendant is entitled to an explanatory instruction which "should focus the effect of the concept on the relevant issues that are to be considered, but without reference to the result thereof." These principles are equally applicable to unavoidable accident.

■ The second sentence of the challenged instruction departs from the original function of unavoidable accident which is set forth in *Wheeler.* The instruction also goes further than merely focusing the effect of the concept on the relevant issues to be considered by the jury. Under the circumstances, we conclude that the trial court erred by including the second sentence of

the challenged instruction in its charge. Our disposition of this case does not require a new trial; therefore, we respectfully refrain from suggesting a dictum instruction on unavoidable accident.[2]

Rule 434 of the Texas Rules of Civil Procedure provides, in part:

[T]hat no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case  .    . .

■ Harmful error may not be presumed. *Walker v. Texas Employers' Insurance Association*, 155 Tex. 617, 291 S.W.2d 298, 301 (1956). Davis also has the burden of showing harmful error. *See City of Galveston v. Hill*, 151 Tex. 139, 246 S.W.2d 860, 863 (1952). In *State v. Parrish*, 159 Tex. 306, 320 S.W.2d 330, 332–33 (1959), the Supreme Court said:

The reversal of the trial court's judgment is not justified unless an examination of the record as a whole leads to the conviction that the error was calculated to cause and probably did cause the jury to give the answer it did to all issues which will support the judgment.

As we stated above, the jury refused to find Thompson guilty of any negligent conduct which was a proximate cause of the occurrence in question. Davis does not contend in this court that he conclusively established any negligent conduct which was a proximate cause of the occurrence in question, nor does he contend that the jury's failure to make such findings is so against the great weight and preponder-

---

**2.** In this connection, we note that the Texas Pattern Jury Charges suggests:

If 'unavoidable accident' is raised, the Committee recommends the following instruction, to be placed between the definitions of negligence and proximate cause:

An occurrence may be an unavoidable accident, that is, an event not proximately caused by the negligence of any party to it.

1 State Bar of Texas, Texas Pattern Jury Charges 3.03 (Supp.1973). We expressly refrain from approving or disapproving this recommended method of submission of unavoidable accident.

ance of the evidence as to be manifestly unjust. Although the jury's failure to find a fact vital to Davis's action need not be supported by affirmative evidence, *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973), a reading of the Statement of Facts shows there is ample evidence to justify the jury verdict. In essence, Davis failed to persuade the jury that Thompson was guilty of any negligent conduct which was a proximate cause of the occurrence in question. Under the circumstances, we must conclude that the erroneous instruction is harmless error under Rule 434.

■ Davis complains in points of error one, three, four, six, and seven, respectively, that the trial court committed reversible error because the challenged instruction improperly placed the burden of proof, conditioned the charge on an inferential rebuttal issue, denied an independent submission of the negligence and proximate cause issues, informed the jury of the effect of and made reference to the results of the unavoidable accident concept, and was not raised by the pleadings. However, he did not object to the instruction on any of these grounds. Rule 274 of the Texas Rules of Civil Procedure specifically provides:

A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections. . . .

Under the circumstances Davis waived these matters, *Punch v. Gerlach*, 153 Tex. 39, 263 S.W.2d 770, 771 (1954), and thereby failed to preserve such complaints for consideration by this court.

■ Davis also asserts that the trial court committed reversible error by chastising his expert witness in the presence of the jury because the chastisement was a prejudicial comment on the weight of the evidence. We do not agree.

The record reflects that the witness had made numerous unresponsive answers to questions which called for a yes or no answer. The court instructed the witness as follows:

THE COURT: I've set here for about an hour and a lot of these questions take a yes or no answer and you're not doing it, and I'm telling you right now you'll answer yes or no. Do you understand?

MR. RUBLE: Very clearly, sir.

THE COURT: Proceed.

In *Sands v. Cooke*, 368 S.W.2d 111, 112–13 (Tex.Civ.App.—San Antonio 1963, no writ), the court pointed out that:

[A] 'judge is necessarily allowed some discretion in expressing himself while controlling the trial of a case, and a reversal of a judgment should not be ordered unless a showing of impropriety, coupled with probable prejudice, is made.'

The court's instruction to the witness is not a comment on the weight of the evidence. The judge did no more than exercise his duty to control the trial of the case. Under the record before us, we are not able to say his comments were reasonably calculated to cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

In his brief, Davis asserted eleven points of error complaining of the matters which are discussed in this opinion. We overrule points of error two, five, eight, and ten. Our determination of these points is dispositive of this appeal; therefore, we deem it unnecessary to discuss further the remaining points of error. Accordingly, the judgment of the trial court is affirmed.